FILED
APR 30 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 08 CR 50004-1 |
| vs. ) | Judge Philip G. Reinhard |
| ) | |
| JEFF BARTLETT ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JEFF BARTLETT, and his attorney, JED STONE, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The indictment in this case charges defendant with arson in violation of Title 18, United States Code, Section 844(i).

3. Defendant has read the charge against him contained in the indictment, and that charge has been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the indictment. The indictment in this case charges defendant with arson in violation of Title 18, United States Code, Section 844(i).

## Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

    a.    As charged in the indictment, on July 22, 2000, defendant, did maliciously damage and destroy, and attempt to damage and destroy, by means of fire, a building and personal property located at 4606 East State Street, Rockford, Illinois, which was then being used in activities affecting interstate commerce, in violation of Title 18, United States Code, Section 844(i).

    b.    Specifically, defendant admits that during the winter of 1999, defendant told an acquaintance, Thomas Jaeger, that he and a family member (hereinafter referred to as "Individual A") had an ongoing feud and that he wanted Jaeger to burn down Individual A's Rockford business located at 4606 East State Street, Rockford, Illinois. Defendant and Jaeger eventually agreed on a price of $4000 to set the fire. Defendant drove Jaeger to Rockford and showed him where Individual A's business was located. After meeting with defendant, Jaeger hired a third party ("Individual B") to set the fire. During the weekend specified by defendant, Jaeger and Individual B constructed an incendiary device that consisted of seven 2 liter pop bottles filled with gasoline. Once the bottles were filled with gasoline, they were placed inside a duffel bag. Jaeger then inserted a fuse through the bag and into one of the bottles. On July 22, 2000, Jaeger drove Individual B to Rockford. Jaeger

parked his car approximately two blocks away from the target business and waited while Individual B went to business with the incendiary device. After one-half hour passed, Individual B ran back to the car. He told Jaeger that he broke out a first floor window at the rear of the business, threw the bomb inside and ignited it. Jaeger and Individual B then left the area. A fire was ignited inside the target business and caused more than $60,000 in damage to the building and personal property located therein.

A few days after the fire, defendant showed up at Jaeger's residence unannounced. He was very pleased about the fire and paid Jaeger $3000 in cash for setting the fire.

On and prior to July 22, 2000, the building and personal property at 4606 East State Street, Rockford, Illinois were then being used in activities affecting interstate commerce.

    7.    Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3 in that the conduct occurred during the course of attempting to avoid responsibility for the arson:

    a.    In October 2007, defendant met with a confidential informant (hereinafter referred to as "CI") and learned that the CI was subpoenaed to appear and testify before the federal grand jury investigating this case. Thereafter, defendant coached the CI on how to provide false testimony to the grand jury that was favorable to defendant.

    b.    In October 2007, defendant learned that a former employee of his had

been subpoenaed to testify before the federal grand jury investigating this case. Defendant arranged for a third party to meet with this former employee to offer him $5000 in exchange for giving false testimony to the grand jury. In October 2007, the former employee appeared before the federal grand jury and testified falsely. This testimony was also favorable to defendant. In December 2007, defendant met with the former employee and paid him $500 in exchange for his false grand jury testimony.

### Maximum Statutory Penalties

8. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of 20 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

    b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

    c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

9. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10. For purposes of calculating the Sentencing Guidelines, the parties agree and disagree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b. **Offense Level Calculations.**

i. The government contends that the base offense level for the charge in the indictment is 24, pursuant to Guideline Section 2K1.4(a)(1) because the defendant knowingly created a substantial risk of death or serious bodily injury to any person other than a participant in the offense and involved the attempted destruction of a structure. The defendant reserves the right to argue that the base offense level is 20 pursuant to Guideline Section 2K1.4(a)(2).

ii. The government contends that pursuant to Guideline Section 3B1.1(c), the offense level is increased by 2 levels because defendant was an organizer,

leader, manager, supervisor of the criminal activity charged in the indictment. The defendant reserves the right to challenge this enhancement.

    iii. The government contends that pursuant to Guideline Section 3C1.1, the offense level is increased by 2 levels because defendant willfully attempted to obstruct the administration of justice with respect to the investigation of the instant offense of conviction and the obstructive conduct related to the defendant's offense of conviction and relevant conduct. The defendant reserves the right to challenge this enhancement.

    iv. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    v. In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level

reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

       c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 5 and defendant's criminal history category is III:

       i.    On or about July 5, 1983, defendant was convicted of criminal trespass to land in the Circuit Court of Cook County and sentenced to 10 days in jail and one year probation. Pursuant to Guideline Section 4A1.1(c) this conviction results in 0 criminal history points.

       ii.    On or about August 15, 1983, the defendant was convicted of battery in Circuit Cook County and sentenced to serve one year of probation. Pursuant to Guideline Section 4A1.1(c) this conviction results in 0 criminal history points.

       iii.    On January 12, 1984, the defendant was convicted of burglary in the Circuit Court of DuPage County and sentenced serve 2 years in the Illinois Department of Corrections. Pursuant to Guideline Section 4A1.1(a) this conviction results in 0 criminal history points.

       iv.    On August 30, 1985, the defendant was convicted of criminal damage to property in the Circuit Court of DuPage County and sentenced to pay a fine and

restitution. Pursuant to Guideline Section 4A1.1(c) this conviction results in 0 criminal history points.

   v. On January 7, 1986, the defendant was convicted of battery in the Circuit Court of DuPage County and sentenced to serve 1 year conditional discharge and to pay a fine. Pursuant to Guideline Section 4A1.1(c) this conviction results in 0 criminal history points.

   vi. On June 13, 1989, the defendant was convicted of unlawful use of weapons and resisting a peace officer in the Circuit Court of DuPage County and sentenced to serve 173 days in jail. Pursuant to Guideline Section 4A1.1(b) this conviction results in 0 criminal history points.

   vii. On July 2, 1991, the defendant was convicted of battery in the Circuit Court of DuPage County and sentenced to serve 1 year of conditional discharge. Pursuant to Guideline Section 4A1.1(c) this conviction results in 1 criminal history point.

   viii. On February 18, 1992, the defendant was convicted of aggravated battery in the Circuit Court of Lake County, Illinois and sentenced to serve 26 months in the Illinois Department of Corrections. Pursuant to Guideline Section 4A1.1(a) this conviction results in 3 criminal history points.

   ix. On July 7, 1994, the defendant was convicted of domestic battery in Cook County and ordered to serve a sentence of one year conditional discharge. Pursuant to Guideline Section 4A1.1(c) this conviction results in 1 criminal history point.

   d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 25, which, when combined with the anticipated criminal history category of III, results in an anticipated advisory Sentencing Guidelines range of 70 to 87 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 5 years' imprisonment.

   e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

   f. Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the

Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. The government agrees to recommend that sentence be imposed within the applicable guidelines range but not less than the mandatory minimum sentence, and to make no further recommendation concerning at what point within the range sentence should be imposed.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, the parties acknowledge that the total amount of restitution owed to Cincinnati Insurance Company is $67,548, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, to make full restitution in the amount outstanding at the time of sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Presentence Investigation Report/Post-Sentence Supervision

15. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

16. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is

sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 50004-1.

19. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

20. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charge against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence

was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

  c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

  21. By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

### Other Terms

  22. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing

financial statements and supporting records as requested by the United States Attorney's Office.

23. Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

## Conclusion

24. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

25. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

26. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

27. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

28. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 4-30-08

_____  _____
PATRICK J. FITZGERALD          JEFF BARTLETT
United States Attorney         Defendant

_____  _____
MARK T. KARNER                 JED STONE
Assistant U.S. Attorney        Attorney for Defendant