UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  08 CR 50004-1 |
| | ) | Judge Philip G. Reinhard |
| JEFF BARTLETT | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
OBJECTION TO THE PRESENTENCE REPORT**

The UNITED STATES OF AMERICA, by its attorney, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, respectfully submits the following response to defendant's objection to the Presentence Report ("PSR"):

**I. FACTUAL BACKGROUND**

**I.     DEFENDANT'S SENTENCE SHOULD BE ENHANCED UNDER GUIDELINE SECTION 3b1.1(c)**

Defendant objects to the Probation Officer's assessment of a two-level increase in the offense level pursuant to Guideline § 3B1.1(c).[1] The government asserts that the USPO properly assessed a two-level increase in the adjusted offense level because defendant was an organizer, leader, manager or supervisor of the criminal activity in this case.

Guideline Section 3 B1.1(c) states: "If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by two levels." Application note 4 states in relevant part:

> Factors the court should consider include the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offenses, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one

---

[1]     Defendant raised his objections to the PSR in a letter to the USPO.

person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

In *United States v. Golden*, 954 F.2d 1413, (7th Cir. 1992), defendant pled guilty to conspiracy to commit arson. At the sentencing hearing, the court increased defendant's adjusted offense level by two levels because it found defendant qualified as an "organizer" under Guideline Section 3B1.1(c). *Id*. at 1420. Defendant objected to this enhancement and argued that the court failed to distinguish his degree of culpability from that of the two coconspirators who hired him to commit this crime. *Id.* The Seventh Circuit rejected this argument. It held that the evidence clearly supported the district court's determination that defendant was an "organizer." The court reasoned that defendant's act of recruiting assistance from third parties to set two separate fires and his distribution of smaller fee payments to his accomplices made defendant an organizer of this crime. *Id*. at 1421.

In the instant case, there is substantial evidence that defendant was an organizer or leader of this criminal activity. The idea to burn down the victim's business originated with defendant. In addition, defendant had the primary motive to commit this arson because of his ongoing feud with the victim. Defendant also stood to receive the greatest benefit from this arson by eliminating of one of his primary competitors in the Rockford payday loan business. To ensure that this arson was successfully committed, defendant recruited Thomas Jaeger to actually set the fire at the victim's business.[2] The recruitment of Jaeger occurred after defendant unsuccessfully attempted to hire a third party to commit this arson. Once defendant successfully recruited Jaeger, he drove Jaeger to

---

[2] Unbeknownst to defendant, Jaeger hired a person named Joe Plezbert to construct the incendiary device and to physically ignite the fire at the victim's business. In his July 3, 2008 letter, defendant disputes this account and claims that Jaeger hired a different person to burn down the victim's business. The government stands by Jaeger's account of this offense.

the location of the victim's business and instructed him to destroy the building and computer system. Defendant also gave Jaeger directions on how to quickly and successfully leave the crime scene and directed Jaeger to commit this arson during a certain weekend. Defendant instructed Jaeger to commit the arson on a certain weekend that he planned to be in Canada on a fishing trip. He gave Jaeger this instruction so that he had a successful alibi defense. Defendant also determined the amount of money that Jaeger received for committing the arson and when Jaeger was to be paid.

Therefore, based on all of these facts, defendant qualifies as an organizer, leader manager or supervisor of the criminal activity in this case pursuant to Guideline Section 3B1.1(c).

## II. DEFENDANT SHOULD RECEIVE THREE POINTS FOR ACCEPTANCE OF RESPONSIBILITY

The government's position is that the USPO properly assessed a two-level increase in the offense level for defendant's obstruction of justice under Guideline Section 3C1.1. However, the government objects to the USPO's determination that defendant does not qualify for a two-level reduction for acceptance of responsibility under Guideline Section 3E1.1(a). In his letter to the USPO, defense counsel completely and accurately described the chain of events that resulted in defendant's guilty plea. Based on defendant's quick willingness to plead guilty and the degree of attenuation between his attempt to obstruct the grand jury's investigation and his change of plea, the government believes that this is an "extraordinary case." Therefore, the government respectfully requests that the court grant defendant a three-level reduction in the offense level for his acceptance of responsibility in this case.

## III. THE UNITED STATES PROBATION OFFICER PROPERLY ASSESSED 7 CRIMINAL HISTORY POINTS TO DEFENDANT

Defendant has objected to the assessment of criminal history points for 6 separate misdemeanor convictions in which defendant served a term or probation or conditional discharge that did not exceed one year. The government disagrees with defendant's position on this issue and asserts that these convictions were for the type of misdemeanor offenses that do not require a term of probation or conditional discharge to exceed one year.

Guideline Section 4A1.2(c) states in relevant part:

......Sentences for misdemeanor and petty offenses *are counted* [emphasis added], except as follows:

> (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
>
> Careless or reckless driving
> Contempt of court
> Disorderly conduct or disturbing the peace
> Driving without a license or with a revoked or suspended license
> False information to a police officer
> Gambling
> Hindering or failure to obey a police officer
> Insufficient funds check
> Leaving the scene of an accident
> Non-support
> Prostitution
> Resisting arrest
> Trespassing.

Defendant, the USPO and the government agree that defendant should not be assessed 1 criminal history point for his July 31, 2003 conviction in Boone County for driving on a revoked license because defendant's term of court supervision did not exceed one year.[3]

---

[3] In defendant's July 3, 2008 letter to the USPO he appears to refer to object to the same conviction twice. The conviction for driving while license revoked described in subparagraph 3A,

Defendant's objection to the assessment of 1 criminal history point for his 1993 conviction of domestic battery in Cook County, Illinois is without merit. Domestic battery is not listed or "similar" to any of the offenses listed under Guideline Section 4A1.2(c)(1). Therefore, it is the type of misdemeanor offense that is counted regardless of the length of the term of probation or conditional discharge that was imposed.

Defendant's objection to the assessment of 1 criminal history point for his 1994 conviction of "criminal damage to property" in Cook County, Illinois is without merit. The Presentence Investigation Report ("PSR") reports that the criminal damage to property count (Count I) was actually dismissed and that defendant pled guilty to leaving the scene of a personal injury accident and driving on a suspended/revoked license. For a misdemeanor offense listed under Guideline Section 4A1.2(c)(1)(A) to count, the sentence imposed must involve a term of probation exceeding one year *or* 30 days imprisonment. Here, the probation officer properly assessed 1 criminal history point for these convictions because part of defendant's sentence required him to serve thirty days imprisonment.

Defendant's objection to the assessment of 1 criminal history point for his 1996 conviction of driving under the influence of alcohol in DuPage County, Illinois is without merit. Application Note 5 of Guideline Section 4A1.2 states:

> Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses traffic infractions with the meaning of Section 4A1.2(c).

---

is the same conviction he described in subparagraph 3G.

Therefore, the USPO properly assessed 1 criminal history point for this conviction even though the term of court supervision that was imposed was terminated less than one year after defendant pled guilty.

Defendant's objection to the assessment of 1 criminal history point for his 2002 conviction of criminal damage to property in Winnebago County, Illinois is without merit. Criminal damage to property is not listed or "similar" to any of the offenses listed under Guideline Section 4A1.2(c)(1). Therefore, it is the type of misdemeanor offense that is counted regardless of the length of the term of probation or conditional discharge that was imposed.

Defendant's objection to the assessment of 1 criminal history point for his 2002 conviction of domestic battery in Winnebago County, Illinois is without merit. Domestic battery is not listed or "similar" to any of the offenses listed under Guideline Section 4A1.2(c)(1). Therefore, it is the type of misdemeanor offense that is counted regardless of the length of the term of probation or conditional discharge that was imposed.

Therefore, the government agrees with the USPO's determination that there is a total of 7 criminal history points that can be assessed to defendant and that he is in criminal history category IV.

### III.  CONCLUSION

For the reasons stated above, the United States respectfully requests that this court find that the defendant acted as an organizer, leader, manager or supervisor in this case and that the USPO's calculation of defendant's criminal history points is correct.  The government also respectfully requests that the court grand defendant a three-level reduction in the adjusted offense level because defendant has fully accepted responsibility for committing arson.

                    Respectfully submitted,

                    PATRICK J. FITZGERALD
                    United States Attorney

By:      _____\S_____
           MARK T. KARNER
           Assistant United States Attorney
           308 West State Street - Room 300
           Rockford, Illinois 61101
           815-987-4444

**CERTIFICATE OF FILING AND SERVICE**

I, MARK T. KARNER, certify that on July 16, 2008, I caused the foregoing pleading (1) to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Western Division; and (2) a copy thereof to be mailed to:

>Mr. Jed Stone, Esq.
>415 West Washington Street
>Suite 107
>Waukegan, IL 60085

>\S
>MARK T. KARNER
>Assistant United States Attorney
>308 West State Street - Room 300
>Rockford, Illinois 61101
>815-987-4444